UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DAVID MERINO; STEVE MARANVILLE; KARA MERINO; BRENDA MARANVILLE,

Plaintiffs,

v.

EL DORADO HILLS COUNTY WATER DISTRICT; and DOES 1-50,

Defendants.
_______________________________/

NO. CIV. S-10-2152 LKK/DAD

O R D E R

Plaintiffs complain that they suffered adverse employment actions - one was terminated, one was demoted - in violation of their procedural Due Process rights, and in retaliation for exercising their First Amendment rights. For the reasons set forth below, the court will grant defendant's converted Motion for Summary Judgment on the procedural Due Process claim, and deny its Motion To Dismiss the First Amendment claim.

////

////

# I. BACKGROUND

## A. Underlying Facts

Before the incidents alleged in the Complaint, plaintiffs Maranville and Merino were Captains with defendant El Dorado Hills Fire Department (a/k/a El Dorado Hills County Water District) (the "Department"). On April 16, 2009, a female firefighter filed a complaint alleging that plaintiff Maranville had created a hostile work environment. Veerkamp Decl. ¶ 3 (October 6, 2011) (Dkt. No. 37-1). The Department investigated the complaint. Veerkamp Decl. ¶ 4. The investigative report was presented to Fire Chief Veerkamp, who reviewed it and determined that Maranville, as well as Merino, should be terminated. Veerkamp Decl. ¶ 5.[1]

On August 21, 2009, Maranville and Merino were placed on paid administrative leave, Maranville Decl. ¶ 5;[2] Merino Decl. ¶ 5 & Exh. 2, and notified in a memo from Veerkamp that the Department intended to terminate their employment. Veerkamp Decl. ¶ 6 & Exhs. 2 & 3. As part of their paid administrative leave, both plaintiffs were placed on 40-hour work weeks, rather than the 56-hour work weeks they had been on before. Blair Suppl. Decl. (October 6, 2011) ¶¶ 2 & 6 (Dkt. No. 37-2);

---

[1] Plaintiffs allege that the hostile work environment claim was concocted by Veerkamp in retaliation for plaintiffs' complaints about Veerkamp's alleged homophobia. Complaint ¶ 17.

[2] The memo placing Maranville on paid administrative leave is not included in the submitted materials, but no party disputes its existence, date or contents.

Maranville Decl. ¶¶ 5 & 7; Merino Decl. ¶¶ 5 & 7. Despite the reduction in hours, both plaintiffs were paid the same gross salary – excluding any type of overtime – through an adjustment in their hourly pay rate. Blair Suppl. Decl. ¶ 6; Maranville Decl. Exhs. F-H; Merino Decl. Exhs. A-C.[3] However, during the paid administrative leave, plaintiffs were not eligible for the overtime payments they had previously received, as they were permitted to work only 40 hours per week, not enough (53 or 56 hours) to earn overtime. Maranville Decl. ¶¶ 3-5; Merino ¶¶ 3-5; Blair Suppl. Decl. ¶ 4-6.

On September 2, 2009, Veerkamp conducted a Skelly hearing on the charges against plaintiffs.[4] Maranville Decl. ¶ 8; Merino Decl. ¶ 8; Veerkamp Decl. ¶ 8. Both plaintiffs were represented by counsel at the hearing. Veerkamp Decl. ¶ 8.

On October 1, 2009, Veerkamp: (i) notified Maranville in writing that the Department had decided to terminate him effective that same day; and (ii) notified Merino in writing that the Department had decided to demote him, effective that

---

[3] Plaintiffs' declaration exhibits show that during their paid administrative leave, they received the same pay and benefits, but no overtime pay.

[4] In Skelly v. State Personnel Bd., 15 Cal.3d 194 (1975), the California Supreme Court held that a permanent employee was entitled to a hearing *prior* to termination. At a minimum, "these preremoval safeguards must include notice of the proposed action, the reasons therefor, a copy of the charges and materials upon which the action is based, and the right to respond, either orally or in writing, to the authority initially imposing discipline." Skelly, 15 Cal.3d at 215.

same day.[5] Both plaintiffs appealed the decisions. Maranville Decl. ¶ 8; Merino Decl. ¶ 8. The appeal was heard by a Hearing Officer, who conducted an arbitration.

On May 7, 2011, the arbitration decision was issued.[6] Bair Decl. ¶ 2 & Exh. 1 (Dkt. No. 27-2). The arbitrator found that "the evidence fails to prove proper cause" for the termination and demotion. Bair Decl. Exh. 1 at 29. It recommends that both plaintiffs be "retroactively reinstated" to their positions as Captain, and "made whole" for all lost wages and related benefits ...." Id.

On May 19, 2011, the Department adopted the arbitration decision in its entirety. Bair Decl. Exh. 2 (Dkt. No. 27-2 at 34 & 36). The termination and demotion were "rescinded," and both were "reinstated" to the rank of Captain "effective immediately." Id. In other words, both defendants "were given their respective jobs and positions back." Plaintiffs' Reply at 2 (August 13, 2011) (Dkt. No. 30); Defendant's Opposition at 1 (July 15, 2011) (Dkt. No. 27-1). The Department determined that because both plaintiffs had been on paid administrative leave,

[5] It is not clear whether it is relevant to this lawsuit, but at some unspecified time prior to the termination letter, Maranville allegedly "asked the Board for protection," and filed a "Retaliation grievance with the Board." Complaint ¶ 25 & n.1.

[6] Plaintiff filed this lawsuit in August 2010, while the arbitration was still under way. Plaintiffs accordingly sought, and were granted, stays of this litigation until the arbitration could be completed. See Stay Orders, Dkt. Nos. 8, 10, 13, 16 & 18. The litigation in this court resumed once the arbitration process was completed.

"all benefits ... continued to accrue," they had "no lost wages or deprivation of benefits," their seniority "has not been affected," and the whole affair would be removed from plaintiffs' personnel files. Bair Decl. Exh. 2 (Dkt. No. 27-2 at 35 & 37).

**B. Procedings in the District Court**

On July 15, 2011, defendant El Dorado Hills filed a Motion To Dismiss. (Dkt. No. 27-1). In support of the motion to dismiss the Due Process claim, defendant submitted a Declaration by Connie L. Bair, the Department's Chief Financial Officer. (Dkt. No. 27-2). The Declaration attached the arbitration decision, the letters adopting the decisions as to both plaintiffs, and other documents. Plaintiffs were silent on the submission of the Declaration and its documents, but in their Reply, they recite facts that are consistent with the attached documents. (Dkt. No. 27-2).

The court determined that the documents were relevant to the motion and should be considered, but that they could not be considered on the dismissal motion. The "incorporation by reference doctrine" did not apply, since the documents were not referenced in the complaint.[7] The "extended" version of the "incorporation by reference doctrine" did not apply, because

[7] The "incorporation by reference" doctrine permits the court to take into account documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached" to the complaint. Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005) (citations and internal quotation marks omitted).

plaintiff's claim did not depend upon the contents of the documents.[8] Finally, defendant did not seek judicial notice of the documents, and it is not clear that all the attached documents, particularly Exhibit 2 (letters from defendant to plaintiffs), are subject to *sua sponte* judicial notice.

The court accordingly converted the Due Process dismissal motion into a summary judgment motion. See Fed. R. Civ. P. 12(d) (conversion of 12(b)(6) motion to Rule 56 summary judgment motion). The parties were granted additional time to respond and reply to the converted summary judgment motion.

## II. STANDARDS

### A. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Ricci v. DeStefano, 557 U.S. ___, 129 S. Ct. 2658, 2677 (2009) (it is the movant's burden "to demonstrate that there is 'no genuine issue as to any material fact' and that they are 'entitled to judgment as a matter of law'"); Walls v. Central Contra Costa Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011) (same).

[8] "We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." Knievel, 393 F.3d at 1076.

Consequently, "[s]ummary judgment must be denied" if the court "determines that a 'genuine dispute as to [a] material fact' precludes immediate entry of judgment as a matter of law." Ortiz v. Jordan, 562 U.S. ___, 131 S. Ct. 884, 891 (2011), quoting Fed. R. Civ. P. 56(a); Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, ___ F.3d ___, 2011 WL 4336667 at 3 (9th Cir. September 16, 2011) (same).

Under summary judgment practice, the moving party bears the initial responsibility of informing the district court of the basis for its motion, and "citing to particular parts of the materials in the record," Fed. R. Civ. P. 56(c)(1)(A), that show "that a fact cannot be ... disputed." Fed. R. Civ. P. 56(c)(1); In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) ("The moving party initially bears the burden of proving the absence of a genuine issue of material fact"), citing Celotex v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial responsibility, the burden then shifts to the non-moving party to establish the existence of a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986); Oracle Corp., 627 F.3d at 387 (where the moving party meets its burden, "the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial"). In doing so, the non-moving party may not rely upon the denials of its pleadings, but must tender evidence of specific facts in the form of affidavits and/or other

admissible materials in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c)(1)(A).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls, 65.3 F.3d at 966. Because the court only considers inferences "supported by the evidence," it is the non-moving party's obligation to produce a factual predicate as a basis for such inferences. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87 (citations omitted).

**B. Dismissal Standard**

A dismissal motion under Fed. R. Civ. P. 12(b)(6) challenges a complaint's compliance with the federal pleading requirements. Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must give the defendant "'fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007), quoting Conley v. Gibson, 355 U.S. 41, 47 (1957).

To meet this requirement, the complaint must be supported by factual allegations. Ashcroft v. Iqbal, 556 U.S. 662, ___,

129 S. Ct. 1937 (2009). Moreover, this court "must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).[9]

"While legal conclusions can provide the framework of a complaint," neither legal conclusions nor conclusory statements are themselves sufficient, and such statements are not entitled to a presumption of truth. Iqbal, 556 U.S. at ___, 129 S. Ct. at 1949-50. Iqbal and Twombly therefore prescribe a two step process for evaluation of motions to dismiss. The court first identifies the non-conclusory factual allegations, and then determines whether these allegations, taken as true and construed in the light most favorable to the plaintiff, "plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at ___, 129 S. Ct. at 1949-50.

"Plausibility," as it is used in Twombly and Iqbal, does not refer to the likelihood that a pleader will succeed in proving the allegations. Instead, it refers to whether the non-conclusory factual allegations, when assumed to be true, "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at ___, 129 S. Ct. at 1949. "The plausibility standard is

---

[9] Citing Twombly, 556 U.S. at 555-56, Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("[w]hat Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations"), and Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) ("it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test" under Rule 12(b)(6)).

not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 557).[10] A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

**III. ANALYSIS - DUE PROCESS CLAIM**

**A. Due Process Standards under Section 1983.**

"A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." Brewster v. Board of Educ. of Lynwood Unified School Dist., 149 F.3d 971, 982 (9th Cir. 1998), cert. denied,

---

[10] Twombly imposed an apparently new "plausibility" gloss on the previously well-known Rule 8(a) standard, and retired the long-established "no set of facts" standard of Conley v. Gibson, 355 U.S. 41 (1957), although it did not overrule that case outright. See Moss v. U.S. Secret Service, 572 F.3d 962, 968 (9th Cir. 2009) (the Twombly Court "cautioned that it was not outright overruling Conley ...," although it was retiring the "no set of facts" language from Conley). The Ninth Circuit has acknowledged the difficulty of applying the resulting standard, given the "perplexing" mix of standards the Supreme Court has applied in recent cases. See Starr v. Baca, 652 F.3d 1202, 1215 (9th Cir. 2011) (comparing the Court's application of the "original, more lenient version of Rule 8(a)" in Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002) and Erickson v. Pardus, 551 U.S. 89 (2007) (per curiam), with the seemingly "higher pleading standard" in Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336 (2005), Twombly and Iqbal), rehearing *en banc* denied, ___ F.3d ___, 2011 WL 4582500 (October 5, 2011). See also Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011) (applying the "no set of facts" standard to a Section 1983 case).

526 U.S. 1018 (1999).[11]

**1. Summary of the arguments**

Defendant asserts that the procedural Due Process claim is predicated solely upon plaintiffs' allegations that their Skelly hearing was flawed. Defendant argues that any defect in the Skelly hearing process was "cured" by the arbitration and board review process that followed, citing Walker v. City of Berkeley, 951 F.2d 182 (9th Cir. 1991). Plaintiffs respond that subsequent process did not "cure" the violation because it did not compensate them for lost overtime opportunities.

**2. Resolution of the Due Process Claim**

"[T]he Due Process Clause provides that certain substantive rights - life, liberty, and property - cannot be deprived except pursuant to constitutionally adequate procedures." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985). The "property" interests protected by the Due Process Clause "'are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law ....'" Id., 470 U.S. at 538, quoting, Board of Regents v. Roth, 408 U.S.564, 577 (1972).

The undisputed materials submitted on this summary judgment

---

[11] "To bring a § 1983 claim against a local government entity, a plaintiff must plead that a municipality's policy or custom caused a violation of the plaintiff's constitutional rights." Association for Los Angeles Deputy Sheriffs v. County of Los Angeles, 2011 WL 3524129 at 3 (9th Cir. 2011), citing Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978). Defendant does not dispute that the Department's conduct arose out of its policy or custom.

motion show that both plaintiffs were California public employees when they filed this lawsuit. Under California law, plaintiffs therefore had a property interest in continued employment. Skelly v. State Personnel Bd., 15 Cal.3d 194 (1975). Both plaintiffs were relieved of duty and placed on paid administrative leave. Ultimately, both parties were deprived of their protected interest on October 1, 2009, when the Department terminated Maranville and demoted Merino.[12]

The court next turns to what process was due the plaintiffs in connection with the deprivation of this property interest.

> It is well settled that "the root requirement of the Due Process Clause [is] that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." Although the pre-termination hearing need not be elaborate, "some kind of hearing" must be afforded the employee prior

---

[12] Defendant does not deny that plaintiffs were thereby deprived of their constitutionally protected interest in continued employment with the state. The court notes, however, that materials both sides have submitted tend to create doubt about whether any constitutional deprivation occurred here in the first place. It is not clear that plaintiffs really ever lost their jobs (notwithstanding letters saying that they had), and they never lost income (other than lost overtime opportunities), since they were on full paid administrative leave up until the decision to discipline them was rescinded by the Department. Indeed, the materials show that plaintiffs' hourly pay rate was increased during their administrative leave to ensure that they would receive the same base base despite the loss in hours from 53 (or 56) to 40. On the other hand, it is undisputed that both plaintiffs lost overtime opportunities that they appear to have taken full advantage of prior to their administrative leave, and which, they say, they and their families had come to depend upon.

> to termination. The essential requirements of this pre-termination process are notice and an opportunity to respond.

Clements v. Airport Authority, 69 F.3d 321, 331-32 (9th Cir. 1995) (citations omitted). It is undisputed that plaintiffs received the required pre-deprivation hearing, namely, the Skelly hearing presided over by Fire Chief Veerkamp. It is undisputed that plaintiffs received notice of the hearing and had an opportunity to respond to the charges against them. Indeed, it is undisputed that both plaintiffs were represented by counsel at that hearing. Finally, it is undisputed that both plaintiffs appealed the decisions of the Skelly hearing, and were provided a separate post-termination arbitration proceeding. Maranville Decl. ¶ 12; Merino Decl. ¶ 12.

Plaintiffs assert that their due process rights were violated because the pre-termination hearing was presided over by Veerkamp, who, they say, was biased against them. In the Ninth Circuit, however, the pre-termination hearing need not be conducted by an impartial hearing officer, so long the post-termination proceeding is conducted by an impartial decisionmaker:

> A pre-termination hearing involves only notice and an opportunity to respond, and does not constitute an "adjudication." Thus, the decisionmaker in a pre-termination hearing need not be impartial, so long

> as an impartial decisionmaker is provided at the post-termination hearing.

Clements v. Airport Authority of Washoe County, 69 F.3d 321, 333 n.15 (9th Cir. 1995), quoting Walker v. City of Berkeley, 951 F.3d 182, 184 (9th Cir. 1991); Trevino v. Lassen Mun. Utility Dist., 2009 WL 385792 at 9 (E.D. Cal. February 13, 2009) (Karlton, J.) (Clements clarified "that 'the decisionmaker in a pre-termination hearing need not be impartial, so long as an impartial decisionmaker is provided at the post-termination hearing'").[13]

Plaintiffs have not asserted that the post-deprivation hearing officer – the arbitrator – was biased or otherwise not impartial. Indeed, the materials submitted in connection with the summary judgment motion indicate that the arbitrator was selected jointly by plaintiffs' union and the defendant pursuant to the Memorandum of Understanding between them. In the absence of any other indication – from either party – that the arbitrator was biased or unbiased, the court draws the reasonable inference that as a result of this joint selection process, an impartial arbitrator was used in the post-termination hearing. In this case, there is no basis for drawing an inference in favor of plaintiffs – for example, that

---

[13] It is key to the Ninth Circuit rule that the pre-termination hearing is not an "adjudication." The court does not find that a biased adjudication can be cured with a subsequent unbiased adjudication.

the post-termination proceeding was biased also – because they have presented no evidence to support such an inference.

Accordingly, the undisputed evidence shows that plaintiffs received all the process they were due in connection with the deprivation of their protected interest in continued employment – (i) a pre-deprivation hearing with notice and an opportunity to be heard; and (ii) a post-deprivation hearing by an impartial decision-maker.

Plaintiffs nevertheless argue that the original hearing bias was not "cured," because they were not compensated for lost overtime opportunities. However, once the court has determined that plaintiffs received all the process that was due, that is the end of that claim. Plaintiffs have identified no authority for the proposition that the court may award them damages for a Due Process claim in the absence of a Due Process violation.[14]

**B. First Amendment**

**1. The Allegations of the Complaint**

Plaintiff alleges that the adverse employment actions were taken as retaliation against them, after they attempted "to report what they perceived as abuses of government funds as well as safety concerns." Complaint ¶ 50. The speech at issue occurred when plaintiffs allegedly discovered that Veerkamp was submitting false financial documents to the Department's Board

[14] The court does not rule on whether plaintiffs can seek retroactive overtime opportunities through some other means, such as their First Amendment claim.

of Directors.[15] Complaint ¶ 16(a). Plaintiffs then: (i) arranged to have "a more substantiated report" submitted to a Board Director, Complaint ¶ 16(a); and (ii) "alerted a second Board Director" of Veerkamp's alleged shenanigans. Complaint ¶ 16(b).

Defendant correctly points out that plaintiffs allege that they made these reports "in their capacity as Captains of the Department." Complaint ¶ 50; Opposition at 13. Based solely upon this allegation, defendant argues that plaintiffs are therefore barred by Garcetti v. Ceballos, 547 U.S. 410 (2006), since their speech activities were undertaken in their official capacities as public employees. Opposition at 13.

It is true that plaintiffs inartfully state under their "Fourth Cause of Action," that they "utilized their first amendment rights" "in their capacity as Captains of the Department, and members of the finance committee." Complaint ¶ 50. However, in the fact section of the complaint, it emerges that plaintiffs were not speaking in their official capacities after all, at least not in the Garcetti sense.

**2. Discussion**

The question therefore, is whether these two communications are protected by the First Amendment or not.

////

[15] The court takes the allegations of the complaint as true solely for purposes of this dismissal motion. The court takes no position on the actual truth or falsity of the allegations.

> The First Amendment drastically limits government's ability to punish or prohibit speech when government acts as a sovereign. The Supreme Court has held that government's actions as a sovereign, however, are distinct from government's actions "as proprietor," with the latter including management of its own employees.

Webb v. County of Trinity, 734 F. Supp.2d 1018, 1027 (E.D. Cal. 2010) (Karlton, J.) (citations omitted). Even in its proprietary role however, "'the state may not abuse its position as employer to stifle 'the First Amendment rights [its employees] would otherwise enjoy as citizens to comment on matters of public interest.'" Clairmont v. Sound Mental Health, 632 F.3d 1091, 1102-03 (9th Cir. 2011) (quoting Eng v. Cooley, 552 F.3d 1062, 1070 (9th Cir. 2009), cert. denied, 558 U.S. ___ (2010)).

Here, plaintiffs have alleged that they are public employees. Accordingly, under Garcetti, plaintiffs' claim that they suffered an adverse employment action in retaliation for their First Amendment speech will fail, if their speech was "made pursuant to [their] duties as" Captains of the Department. See Garcetti, 547 U.S. at 421-22 ("The controlling factor in Ceballos' case is that his expressions were made pursuant to his duties as a calendar deputy"). As formulated in the Ninth Circuit, the question is whether plaintiffs spoke as "private

////

citizen[s] or public employee[s].” Clairmont, 632 F.2d at 1102-03.[16]

“[F]or purposes of the official duties test ... Garcetti and the Ninth Circuit cases interpreting it have looked to whether the employee had a duty to make the speech in question.” Webb, 734 F. Supp.2d at 1029. There is no allegation in the complaint to indicate that plaintiffs had a duty to submit an additional financial report to the Board Director, or to alert another Board Director of the asserted financial shenanigans of the Fire Chief, their superior officer. Defendant’s Motion To Dismiss and its Reply do not direct the court to any cognizable source for such a duty, and indeed, defendant makes no mention of the issue at all. Instead, defendant relies entirely on the inartful pleading of the complaint.

Because there is no basis for the court to conclude that plaintiffs had a duty to engage in the speech, the motion to dismiss - to the degree it is based upon the assertion that plaintiffs spoke as public employees - will be denied.

---

[16] In fact, there are five factors that must be considered: (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech. Anthoine v. North Central Counties Consortium, 605 F.3d 740, 748 (9th Cir. 2010), citing Eng v. Cooley, 552 F.3d 1062, 1070 (9th Cir. 2009); Webb v. County of Trinity, 734 F. Supp.2d 1018, 1027-28 (E.D. Cal. 2010) (Karlton, J.). However, the Garcetti factor is the only one challenged by defendant in this motion.

**IV. CONCLUSION**

For the reasons set forth above:

1. Defendant's converted motion for summary judgment on the procedural Due Process claim is **GRANTED;** and

2. Defendant's Motion To Dismiss the First Amendment retaliation claim is **DENIED.**

3. At the hearing on this motion, plaintiffs indicated that they would like to amend their First Amendment claim to clarify that they were not speaking in their official capacities. Given the court's ruling, such an amendment does not appear to be necessary. Nevertheless, if plaintiffs choose to amend their First Amendment claim, they may do so no later than 14 days from the date of this order.

IT IS SO ORDERED.

DATED: October 26, 2011.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT