UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DAVID MERINO; STEVE
MARANVILLE; KARA MERINO;
BRENDA MARANVILLE,

                              NO. CIV. S-10-2152 LKK/DAD

      Plaintiffs,

   v.

                          O R D E R

EL DORADO HILLS COUNTY
WATER DISTRICT; and
DOES 1-50,

      Defendants.

_____/

    Plaintiffs complain that they suffered adverse employment actions – one was terminated, one was demoted – in violation of their procedural Due Process rights, and in retaliation for exercising their First Amendment rights.  For the reasons set forth below, the court will grant defendant's converted Motion for Summary Judgment on the procedural Due Process claim, and deny its Motion To Dismiss the First Amendment claim.

////

////

1

I.    **BACKGROUND**

    A.    **Underlying Facts**

Before the incidents alleged in the Complaint, plaintiffs Maranville and Merino were Captains with defendant El Dorado Hills Fire Department (a/k/a El Dorado Hills County Water District) (the "Department").  On April 16, 2009, a female firefighter filed a complaint alleging that plaintiff Maranville had created a hostile work environment.  Veerkamp Decl. ¶ 3 (October 6, 2011) (Dkt. No. 37-1).  The Department investigated the complaint.  Veerkamp Decl. ¶ 4.  The investigative report was presented to Fire Chief Veerkamp, who reviewed it and determined that Maranville, as well as Merino, should be terminated.  Veerkamp Decl. ¶ 5.[1]

On August 21, 2009, Maranville and Merino were placed on paid administrative leave, Maranville Decl. ¶ 5;[2] Merino Decl. ¶ 5 & Exh. 2, and notified in a memo from Veerkamp that the Department intended to terminate their employment.  Veerkamp Decl. ¶ 6 & Exhs. 2 & 3.  As part of their paid administrative leave, both plaintiffs were placed on 40-hour work weeks, rather than the 56-hour work weeks they had been on before.  Blair Suppl. Decl. (October 6, 2011) ¶¶ 2 & 6 (Dkt. No. 37-2);

---

[1] Plaintiffs allege that the hostile work environment claim was concocted by Veerkamp in retaliation for plaintiffs' complaints about Veerkamp's alleged homophobia.  Complaint ¶ 17.

[2] The memo placing Maranville on paid administrative leave is not included in the submitted materials, but no party disputes its existence, date or contents.

1  Maranville Decl. ¶¶ 5 & 7; Merino Decl. ¶¶ 5 & 7.  Despite the

2  reduction in hours, both plaintiffs were paid the same gross

3  salary – excluding any type of overtime – through an adjustment

4  in their hourly pay rate.  Blair Suppl. Decl. ¶ 6; Maranville

5  Decl. Exhs. F-H; Merino Decl. Exhs. A-C.[3]  However, during the

6  paid administrative leave, plaintiffs were not eligible for the

7  overtime payments they had previously received, as they were

8  permitted to work only 40 hours per week, not enough (53 or

9  56 hours) to earn overtime.  Maranville Decl. ¶¶ 3-5; Merino ¶¶

10  3-5; Blair Suppl. Decl. ¶ 4-6.

11       On September 2, 2009, Veerkamp conducted a <u>Skelly</u> hearing

12  on the charges against plaintiffs.[4]  Maranville Decl. ¶ 8;

13  Merino Decl. ¶ 8; Veerkamp Decl. ¶ 8.  Both plaintiffs were

14  represented by counsel at the hearing.  Veerkamp Decl. ¶ 8.

15       On October 1, 2009, Veerkamp: (i) notified Maranville in

16  writing that the Department had decided to terminate him

17  effective that same day; and (ii) notified Merino in writing

18  that the Department had decided to demote him, effective that

19

20  ───────────────

21       [3] Plaintiffs' declaration exhibits show that during their paid
administrative leave, they received the same pay and benefits, but
22  no overtime pay.

23       [4] In <u>Skelly v. State Personnel Bd.</u>, 15 Cal.3d 194 (1975), the
California Supreme Court held that a permanent employee was
24  entitled to a hearing *prior* to termination.  At a minimum, "these
preremoval safeguards must include notice of the proposed action,
25  the reasons therefor, a copy of the charges and materials upon
which the action is based, and the right to respond, either orally
26  or in writing, to the authority initially imposing discipline."
<u>Skelly</u>, 15 Cal.3d at 215.

1  same day.[5]  Both plaintiffs appealed the decisions.  Maranville

2  Decl. ¶ 8; Merino Decl. ¶ 8.  The appeal was heard by a Hearing

3  Officer, who conducted an arbitration.

4      On May 7, 2011, the arbitration decision was issued.[6]  Bair

5  Decl. ¶ 2 & Exh. 1 (Dkt. No. 27-2).  The arbitrator found that

6  "the evidence fails to prove proper cause" for the termination

7  and demotion.  Bair Decl. Exh. 1 at 29.  It recommends that both

8  plaintiffs be "retroactively reinstated" to their positions as

9  Captain, and "made whole" for all lost wages and related

10  benefits ...."  Id.

11      On May 19, 2011, the Department adopted the arbitration

12  decision in its entirety.  Bair Decl. Exh. 2 (Dkt. No. 27-2 at

13  34 & 36).  The termination and demotion were "rescinded," and

14  both were "reinstated" to the rank of Captain "effective

15  immediately."  Id.  In other words, both defendants "were given

16  their respective jobs and positions back."  Plaintiffs' Reply at

17  2 (August 13, 2011) (Dkt. No. 30); Defendant's Opposition at 1

18  (July 15, 2011) (Dkt. No. 27-1).  The Department determined that

19  because both plaintiffs had been on paid administrative leave,

20  _____

21     [5] It is not clear whether it is relevant to this lawsuit, but
   at some unspecified time prior to the termination letter,

22  Maranville allegedly "asked the Board for protection," and filed
   a "Retaliation grievance with the Board."  Complaint ¶ 25 & n.1.

23     [6] Plaintiff filed this lawsuit in August 2010, while the
   arbitration was still under way.  Plaintiffs accordingly sought,

24  and were granted, stays of this litigation until the arbitration
   could be completed.  See Stay Orders, Dkt. Nos. 8, 10, 13, 16 & 18.

25  The litigation in this court resumed once the arbitration process
   was completed.

26

"all benefits ... continued to accrue," they had "no lost wages or deprivation of benefits," their seniority "has not been affected," and the whole affair would be removed from plaintiffs' personnel files.  Bair Decl. Exh. 2 (Dkt. No. 27-2 at 35 & 37).

### B.   Procedings in the District Court

On July 15, 2011, defendant El Dorado Hills filed a Motion To Dismiss.  (Dkt. No. 27-1).  In support of the motion to dismiss the Due Process claim, defendant submitted a Declaration by Connie L. Bair, the Department's Chief Financial Officer. (Dkt. No. 27-2).  The Declaration attached the arbitration decision, the letters adopting the decisions as to both plaintiffs, and other documents.  Plaintiffs were silent on the submission of the Declaration and its documents, but in their Reply, they recite facts that are consistent with the attached documents. (Dkt. No. 27-2).

The court determined that the documents were relevant to the motion and should be considered, but that they could not be considered on the dismissal motion.  The "incorporation by reference doctrine" did not apply, since the documents were not referenced in the complaint.[7]  The "extended" version of the "incorporation by reference doctrine" did not apply, because

_____

[7] The "incorporation by reference" doctrine permits the court to take into account documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached" to the complaint.  Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005) (citations and internal quotation marks omitted).

1  plaintiff's claim did not depend upon the contents of the

2  documents.[8]  Finally, defendant did not seek judicial notice of

3  the documents, and it is not clear that all the attached

4  documents, particularly Exhibit 2 (letters from defendant to

5  plaintiffs), are subject to *sua sponte* judicial notice.

6        The court accordingly converted the Due Process dismissal

7  motion into a summary judgment motion.  See Fed. R. Civ.

8  P. 12(d) (conversion of 12(b)(6) motion to Rule 56 summary

9  judgment motion).  The parties were granted additional time to

10  respond and reply to the converted summary judgment motion.

11  **II.   STANDARDS**

12        **A.   Summary Judgment Standard**

13        Summary judgment is appropriate "if the movant shows that

14  there is no genuine dispute as to any material fact and the

15  movant is entitled to judgment as a matter of law."  Fed. R.

16  Civ. P. 56(a); Ricci v. DeStefano, 557 U.S. ___ , 129 S.

17  Ct. 2658, 2677 (2009) (it is the movant's burden "to demonstrate

18  that there is 'no genuine issue as to any material fact' and

19  that they are 'entitled to judgment as a matter of law'"); Walls

20  v. Central Contra Costa Transit Authority, 653 F.3d 963, 966

21  (9th Cir. 2011) (same).

22  _____

23        [8] "We have extended the 'incorporation by reference' doctrine
    to situations in which the plaintiff's claim depends on the
24  contents of a document, the defendant attaches the document to its
    motion to dismiss, and the parties do not dispute the authenticity
25  of the document, even though the plaintiff does not explicitly
    allege the contents of that document in the complaint."  Knievel,
26  393 F.3d at 1076.

1    Consequently, "[s]ummary judgment must be denied" if the
2  court "determines that a 'genuine dispute as to [a] material
3  fact' precludes immediate entry of judgment as a matter of law."
4  Ortiz v. Jordan, 562 U.S. ___, 131 S. Ct. 884, 891 (2011),
5  quoting Fed. R. Civ. P. 56(a); Comite de Jornaleros de Redondo
6  Beach v. City of Redondo Beach, ___ F.3d ___, 2011 WL 4336667
7  at 3 (9th Cir. September 16, 2011) (same).
8    Under summary judgment practice, the moving party bears the
9  initial responsibility of informing the district court of the
10  basis for its motion, and "citing to particular parts of the
11  materials in the record," Fed. R. Civ. P. 56(c)(1)(A), that show
12  "that a fact cannot be ... disputed."  Fed. R. Civ. P. 56(c)(1);
13  In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th
14  Cir. 2010) ("The moving party initially bears the burden of
15  proving the absence of a genuine issue of material fact"),
16  citing Celotex v. Catrett, 477 U.S. 317, 323 (1986).
17    If the moving party meets its initial responsibility, the
18  burden then shifts to the non-moving party to establish the
19  existence of a genuine issue of material fact.  Matsushita Elec.
20  Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986);
21  Oracle Corp., 627 F.3d at 387 (where the moving party meets its
22  burden, "the burden then shifts to the non-moving party to
23  designate specific facts demonstrating the existence of genuine
24  issues for trial").  In doing so, the non-moving party may not
25  rely upon the denials of its pleadings, but must tender evidence
26  of specific facts in the form of affidavits and/or other

7

1  admissible materials in support of its contention that the

2  dispute exists.  Fed. R. Civ. P. 56(c)(1)(A).

3       "In evaluating the evidence to determine whether there is a

4  genuine issue of fact," the court draws "all reasonable

5  inferences supported by the evidence in favor of the non-moving

6  party."  Walls, 65.3 F.3d at 966.  Because the court only

7  considers inferences "supported by the evidence," it is the non-

8  moving party's obligation to produce a factual predicate as a

9  basis for such inferences.  See Richards v. Nielsen Freight

10  Lines, 810 F.2d 898, 902 (9th Cir. 1987).  The opposing party

11  "must do more than simply show that there is some metaphysical

12  doubt as to the material facts ....  Where the record taken as a

13  whole could not lead a rational trier of fact to find for the

14  nonmoving party, there is no 'genuine issue for trial.'"

15  Matsushita, 475 U.S. at 586-87 (citations omitted).

16  **B.   Dismissal Standard**

17       A dismissal motion under Fed. R. Civ. P. 12(b)(6)

18  challenges a complaint's compliance with the federal pleading

19  requirements.  Under Fed. R. Civ. P. 8(a)(2), a pleading must

20  contain a "short and plain statement of the claim showing that

21  the pleader is entitled to relief."  The complaint must give the

22  defendant "'fair notice of what the ... claim is and the grounds

23  upon which it rests.'"  Bell Atlantic v. Twombly, 550 U.S. 544,

24  555 (2007), quoting Conley v. Gibson, 355 U.S. 41, 47 (1957).

25       To meet this requirement, the complaint must be supported

26  by factual allegations.  Ashcroft v. Iqbal, 556 U.S. 662, ___,

8

1  129 S. Ct. 1937 (2009).  Moreover, this court "must accept as

2  true all of the factual allegations contained in the complaint."

3  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).[9]

4      "While legal conclusions can provide the framework of a

5  complaint," neither legal conclusions nor conclusory statements

6  are themselves sufficient, and such statements are not entitled

7  to a presumption of truth.  Iqbal, 556 U.S. at ___, 129 S. Ct.

8  at 1949-50.  Iqbal and Twombly therefore prescribe a two step

9  process for evaluation of motions to dismiss.  The court first

10 identifies the non-conclusory factual allegations, and then

11 determines whether these allegations, taken as true and

12 construed in the light most favorable to the plaintiff,

13 "plausibly give rise to an entitlement to relief."  Iqbal, 556

14 U.S. at ___, 129 S. Ct. at 1949-50.

15     "Plausibility," as it is used in Twombly and Iqbal, does

16 not refer to the likelihood that a pleader will succeed in

17 proving the allegations. Instead, it refers to whether the

18 non-conclusory factual allegations, when assumed to be true,

19 "allow[ ] the court to draw the reasonable inference that the

20 defendant is liable for the misconduct alleged."  Iqbal, 556

21 U.S. at ___, 129 S. Ct. at 1949.  "The plausibility standard is

22

23        [9] Citing Twombly, 556 U.S. at 555-56, Neitzke v. Williams, 490
   U.S. 319, 327 (1989) ("[w]hat Rule 12(b)(6) does not countenance
24 are dismissals based on a judge's disbelief of a complaint's
   factual allegations"), and Scheuer v. Rhodes, 416 U.S. 232, 236
25 (1974) ("it may appear on the face of the pleadings that a recovery
   is very remote and unlikely but that is not the test" under
26 Rule 12(b)(6)).

1    not akin to a 'probability requirement,' but it asks for more

2    than a sheer possibility that a defendant has acted unlawfully."

3    Id. (quoting Twombly, 550 U.S. at 557).[10]   A complaint may fail

4    to show a right to relief either by lacking a cognizable legal

5    theory or by lacking sufficient facts alleged under a cognizable

6    legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d

7    696, 699 (9th Cir. 1990).

8    **III. ANALYSIS - DUE PROCESS CLAIM**

9    **A.   Due Process Standards under Section 1983.**

10       "A procedural due process claim has two distinct elements:

11   (1) a deprivation of a constitutionally protected liberty or

12   property interest, and (2) a denial of adequate procedural

13   protections."  Brewster v. Board of Educ. of Lynwood Unified

14   School Dist., 149 F.3d 971, 982 (9th Cir. 1998), cert. denied,

15

16   ────────────────

17       [10] Twombly imposed an apparently new "plausibility" gloss on
     the previously well-known Rule 8(a) standard, and retired the
     long-established "no set of facts" standard of Conley v. Gibson,
18   355 U.S. 41 (1957), although it did not overrule that case
     outright.  See Moss v. U.S. Secret Service, 572 F.3d 962, 968 (9th
19   Cir. 2009) (the Twombly Court "cautioned that it was not outright
     overruling Conley ...," although it was retiring the "no set of
20   facts" language from Conley).  The Ninth Circuit has acknowledged
     the difficulty of applying the resulting standard, given the
21   "perplexing" mix of standards the Supreme Court has applied in
     recent cases.  See Starr v. Baca, 652 F.3d 1202, 1215 (9th
22   Cir. 2011) (comparing the Court's application of the "original,
     more lenient version of Rule 8(a)" in Swierkiewicz v. Sorema N.A.,
23   534 U.S. 506 (2002) and Erickson v. Pardus, 551 U.S. 89 (2007) (per
     curiam), with the seemingly "higher pleading standard" in Dura
24   Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336 (2005), Twombly and
     Iqbal), rehearing en banc denied, ___ F.3d ___, 2011 WL 4582500
25   (October 5, 2011).  See also Cook v. Brewer, 637 F.3d 1002, 1004
     (9th Cir. 2011) (applying the "no set of facts" standard to a
26   Section 1983 case).

1  526 U.S. 1018 (1999).[11]

2  ### 1.   Summary of the arguments

3  Defendant asserts that the procedural Due Process claim is
4  predicated solely upon plaintiffs' allegations that their <u>Skelly</u>
5  hearing was flawed.  Defendant argues that any defect in the
6  <u>Skelly</u> hearing process was "cured" by the arbitration and board
7  review process that followed, citing <u>Walker v. City of Berkeley</u>,
8  951 F.2d 182 (9th Cir. 1991).  Plaintiffs respond that
9  subsequent process did not "cure" the violation because it did
10  not compensate them for lost overtime opportunities.

11  ### 2.   Resolution of the Due Process Claim

12  "[T]he Due Process Clause provides that certain substantive
13  rights - life, liberty, and property - cannot be deprived except
14  pursuant to constitutionally adequate procedures." <u>Cleveland</u>
15  <u>Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 541 (1985).  The
16  "property" interests protected by the Due Process Clause "'are
17  created and their dimensions are defined by existing rules or
18  understandings that stem from an independent source such as
19  state law ....'" <u>Id.</u>, 470 U.S. at 538, <u>quoting</u>, <u>Board of</u>
20  <u>Regents v. Roth</u>, 408 U.S.564, 577 (1972).

21  The undisputed materials submitted on this summary judgment

22

23  [11] "To bring a § 1983 claim against a local government entity,
a plaintiff must plead that a municipality's policy or custom
caused a violation of the plaintiff's constitutional rights."
24  <u>Association for Los Angeles Deputy Sheriffs v. County of Los</u>
<u>Angeles</u>, 2011 WL 3524129 at 3 (9th Cir. 2011), citing <u>Monell v.</u>
25  <u>Dep't of Soc. Servs.</u>, 436 U.S. 658 (1978).  Defendant does not
dispute that the Department's conduct arose out of its policy or
26  custom.

1  motion show that both plaintiffs were California public

2  employees when they filed this lawsuit.  Under California law,

3  plaintiffs therefore had a property interest in continued

4  employment.  Skelly v. State Personnel Bd., 15 Cal.3d 194

5  (1975).  Both plaintiffs were relieved of duty and placed on

6  paid administrative leave.  Ultimately, both parties were

7  deprived of their protected interest on October 1, 2009, when

8  the Department terminated Maranville and demoted Merino.[12]

9       The court next turns to what process was due the plaintiffs

10  in connection with the deprivation of this property interest.

11       It is well settled that "the root requirement of the

12       Due Process Clause [is] that an individual be given an

13       opportunity for a hearing *before* he is deprived of any

14       significant property interest."  Although the

15       pre-termination hearing need not be elaborate, "some

16       kind of hearing" must be afforded the employee prior

17  _____

18       [12] Defendant does not deny that plaintiffs were thereby
    deprived of their constitutionally protected interest in continued
19  employment with the state.  The court notes, however, that
    materials both sides have submitted tend to create doubt about
20  whether any constitutional deprivation occurred here in the first
    place.  It is not clear that plaintiffs really ever lost their jobs
21  (notwithstanding letters saying that they had), and they never lost
    income (other than lost overtime opportunities), since they were
22  on full paid administrative leave up until the decision to
    discipline them was rescinded by the Department.  Indeed, the
23  materials show that plaintiffs' hourly pay rate was <u>increased</u>
    during their administrative leave to ensure that they would receive
24  the same base base despite the loss in hours from 53 (or 56) to 40.
    On the other hand, it is undisputed that both plaintiffs lost
25  overtime opportunities that they appear to have taken full
    advantage of prior to their administrative leave, and which, they
26  say, they and their families had come to depend upon.

1          to termination.  The essential requirements of this

2          pre-termination process are notice and an opportunity

3          to respond.

4 Clements v. Airport Authority, 69 F.3d 321, 331-32 (9th

5 Cir. 1995) (citations omitted).  It is undisputed that

6 plaintiffs received the required pre-deprivation hearing,

7 namely, the Skelly hearing presided over by Fire Chief Veerkamp.

8 It is undisputed that plaintiffs received notice of the hearing

9 and had an opportunity to respond to the charges against them.

10 Indeed, it is undisputed that both plaintiffs were represented

11 by counsel at that hearing.  Finally, it is undisputed that both

12 plaintiffs appealed the decisions of the Skelly hearing, and

13 were provided a separate post-termination arbitration

14 proceeding.  Maranville Decl. ¶ 12; Merino Decl. ¶ 12.

15      Plaintiffs assert that their due process rights were

16 violated because the pre-termination hearing was presided over

17 by Veerkamp, who, they say, was biased against them.  In the

18 Ninth Circuit, however, the pre-termination hearing need not be

19 conducted by an impartial hearing officer, so long the post-

20 termination proceeding is conducted by an impartial

21 decisionmaker:

22          A pre-termination hearing involves only notice and an

23          opportunity to respond, and does not constitute an

24          "adjudication."  Thus, the decisionmaker in a

25          pre-termination hearing need not be impartial, so long

26

1    as an impartial decisionmaker is provided at the

2    post-termination hearing.

3  Clements v. Airport Authority of Washoe County, 69 F.3d 321,

4  333 n.15 (9th Cir. 1995), quoting Walker v. City of Berkeley,

5  951 F.3d 182, 184 (9th Cir. 1991); Trevino v. Lassen Mun.

6  Utility Dist., 2009 WL 385792 at 9 (E.D. Cal. February 13, 2009)

7  (Karlton, J.) (Clements clarified "that 'the decisionmaker in a

8  pre-termination hearing need not be impartial, so long as an

9  impartial decisionmaker is provided at the post-termination

10 hearing'").[13]

11    Plaintiffs have not asserted that the post-deprivation

12 hearing officer – the arbitrator – was biased or otherwise not

13 impartial.  Indeed, the materials submitted in connection with

14 the summary judgment motion indicate that the arbitrator was

15 selected jointly by plaintiffs' union and the defendant pursuant

16 to the Memorandum of Understanding between them.  In the absence

17 of any other indication – from either party – that the

18 arbitrator was biased or unbiased, the court draws the

19 reasonable inference that as a result of this joint selection

20 process, an impartial arbitrator was used in the post-

21 termination hearing.  In this case, there is no basis for

22 drawing an inference in favor of plaintiffs – for example, that

23

24 _____

25    [13] It is key to the Ninth Circuit rule that the pre-
   termination hearing is not an "adjudication."  The court does not
26 find that a biased adjudication can be cured with a subsequent
   unbiased adjudication.

1   the post-termination proceeding was biased also – because they

2   have presented no evidence to support such an inference.

3        Accordingly, the undisputed evidence shows that plaintiffs

4   received all the process they were due in connection with the

5   deprivation of their protected interest in continued employment

6   – (i) a pre-deprivation hearing with notice and an opportunity

7   to be heard; and (ii) a post-deprivation hearing by an impartial

8   decision-maker.

9        Plaintiffs nevertheless argue that the original hearing

10  bias was not "cured," because they were not compensated for lost

11  overtime opportunities.  However, once the court has determined

12  that plaintiffs received all the process that was due, that is

13  the end of that claim.  Plaintiffs have identified no authority

14  for the proposition that the court may award them damages for a

15  Due Process claim in the absence of a Due Process violation.[14]

16       **B.   First Amendment**

17            **1.   The Allegations of the Complaint**

18       Plaintiff alleges that the adverse employment actions were

19  taken as retaliation against them, after they attempted "to

20  report what they perceived as abuses of government funds as well

21  as safety concerns."  Complaint ¶ 50.  The speech at issue

22  occurred when plaintiffs allegedly discovered that Veerkamp was

23  submitting false financial documents to the Department's Board

24  ───────────────

25       [14] The court does not rule on whether plaintiffs can seek
    retroactive overtime opportunities through some other means, such
26  as their First Amendment claim.

1  of Directors.[15]  Complaint ¶ 16(a).  Plaintiffs then:

2  (i) arranged to have "a more substantiated report" submitted to

3  a Board Director, Complaint ¶ 16(a); and (ii) "alerted a second

4  Board Director" of Veerkamp's alleged shenanigans.  Complaint ¶

5  16(b).

6      Defendant correctly points out that plaintiffs allege that

7  they made these reports "in their capacity as Captains of the

8  Department."  Complaint ¶ 50; Opposition at 13.  Based solely

9  upon this allegation, defendant argues that plaintiffs are

10 therefore barred by Garcetti v. Ceballos, 547 U.S. 410 (2006),

11 since their speech activities were undertaken in their official

12 capacities as public employees.  Opposition at 13.

13      It is true that plaintiffs inartfully state under their

14 "Fourth Cause of Action," that they "utilized their first

15 amendment rights" "in their capacity as Captains of the

16 Department, and members of the finance committee."  Complaint

17 ¶ 50.  However, in the fact section of the complaint, it emerges

18 that plaintiffs were not speaking in their official capacities

19 after all, at least not in the Garcetti sense.

20                    **2.  Discussion**

21      The question therefore, is whether these two communications

22 are protected by the First Amendment or not.

23 ////

24

---

25      [15] The court takes the allegations of the complaint as true
   solely for purposes of this dismissal motion.  The court takes no
26 position on the actual truth or falsity of the allegations.

1        The First Amendment drastically limits government's

2        ability to punish or prohibit speech when government

3        acts as a sovereign.  The Supreme Court has held that

4        government's actions as a sovereign, however, are

5        distinct from government's actions "as proprietor,"

6        with the latter including management of its own

7        employees.

8   Webb v. County of Trinity, 734 F. Supp.2d 1018, 1027 (E.D.

9   Cal. 2010) (Karlton, J.) (citations omitted).  Even in its

10  proprietary role however, "'the state may not abuse its position

11  as employer to stifle 'the First Amendment rights [its

12  employees] would otherwise enjoy as citizens to comment on

13  matters of public interest.'"  Clairmont v. Sound Mental Health,

14  632 F.3d 1091, 1102-03 (9th Cir. 2011) (quoting Eng v. Cooley,

15  552 F.3d 1062, 1070 (9th Cir. 2009), cert. denied, 558 U.S. ___

16  (2010)).

17       Here, plaintiffs have alleged that they are public

18  employees.  Accordingly, under Garcetti, plaintiffs' claim that

19  they suffered an adverse employment action in retaliation for

20  their First Amendment speech will fail, if their speech was

21  "made pursuant to [their] duties as" Captains of the Department.

22  See Garcetti, 547 U.S. at 421-22 ("The controlling factor in

23  Ceballos' case is that his expressions were made pursuant to his

24  duties as a calendar deputy").  As formulated in the Ninth

25  Circuit, the question is whether plaintiffs spoke as "private

26  ////

1 citizen[s] or public employee[s]." <u>Clairmont</u>, 632 F.2d at

2 1102-03.[16]

3     "[F]or purposes of the official duties test ... <u>Garcetti</u>

4 and the Ninth Circuit cases interpreting it have looked to

5 whether the employee had a duty to make the speech in question."

6 <u>Webb</u>, 734 F. Supp.2d at 1029.  There is no allegation in the

7 complaint to indicate that plaintiffs had a duty to submit an

8 additional financial report to the Board Director, or to alert

9 another Board Director of the asserted financial shenanigans of

10 the Fire Chief, their superior officer.  Defendant's Motion To

11 Dismiss and its Reply do not direct the court to any cognizable

12 source for such a duty, and indeed, defendant makes no mention

13 of the issue at all.  Instead, defendant relies entirely on the

14 inartful pleading of the complaint.

15     Because there is no basis for the court to conclude that

16 plaintiffs had a duty to engage in the speech, the motion to

17 dismiss – to the degree it is based upon the assertion that

18 plaintiffs spoke as public employees – will be denied.

19

20     [16] In fact, there are five factors that must be considered:
(1) whether the plaintiff spoke on a matter of public concern; (2)

21 whether the plaintiff spoke as a private citizen or public
employee; (3) whether the plaintiff's protected speech was a

22 substantial or motivating factor in the adverse employment action;
(4) whether the state had an adequate justification for treating

23 the employee differently from other members of the general public;
and (5) whether the state would have taken the adverse employment

24 action even absent the protected speech. <u>Anthoine v. North Central
Counties Consortium</u>, 605 F.3d 740, 748 (9th Cir. 2010), <u>citing</u> <u>Eng

25 v. Cooley</u>, 552 F.3d 1062, 1070 (9th Cir. 2009); <u>Webb v. County of
Trinity</u>, 734 F. Supp.2d 1018, 1027-28 (E.D. Cal. 2010) (Karlton,

26 J.).  However, the <u>Garcetti</u> factor is the only one challenged by
defendant in this motion.

**IV.   CONCLUSION**

  For the reasons set forth above:

  1.   Defendant's converted motion for summary judgment on the procedural Due Process claim is **GRANTED;** and

  2.   Defendant's Motion To Dismiss the First Amendment retaliation claim is **DENIED.**

  3.   At the hearing on this motion, plaintiffs indicated that they would like to amend their First Amendment claim to clarify that they were not speaking in their official capacities.  Given the court's ruling, such an amendment does not appear to be necessary.  Nevertheless, if plaintiffs choose to amend their First Amendment claim, they may do so no later than 14 days from the date of this order.

  IT IS SO ORDERED.

  DATED:  October 26, 2011.


LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

19